UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| **NORTHWEST BANK f/k/a NORTHWEST SAVINGS BANK,** a Pennsylvania state-chartered savings association,<br><br>              Plaintiff,<br><br>    v.<br><br>**MCKEE FAMILY FARMS, INC.,** an Oregon limited liability company; **SCHARF FARMS, INC.**, an Oregon corporation; **DUSTIN WILFONG**, individually and dba **DUSTIN WILFONG FARMS**; **DENNY WILFONG**, individually and dba **WILFONG FARMS**; **K & J FARMS, LLC**, an Oregon limited liability company; **CREEKSIDE VALLEY FARMS, LLC**, an Oregon limited liability company; **ALFRED V. MULLET**; **SJB FARMS, LLC**, an Oregon limited liability company; **KAUER FAMILY FARMS, LLC**, an Oregon limited liability company; **DAN G. FANNING**, individually and dba **FANNING FARMS**; **CLARKE ELLINGSON**; **GILBERT & SON, INC.**, an Oregon corporation; **KEN CRUICKSHANK FARMS, INC.**, an Oregon corporation; **LARRY BURGER**; **DOERFLER FARMS, INC.**, an Oregon corporation; **GOLDEN VALLEY FARMS, LLC**, an Oregon limited liability company; **ZEIGLER FARMS, LLC**, an Oregon limited liability company; **JANZEN FARMS, LLC**, an Oregon limited liability company; **EDIGER FARMS, LLC,** an Oregon limited liability company; **JOHN IMLAH and MARGY IMLAH**, individually and dba **HOOD VIEW FARMS**; **DARYN BRUTKE**; **ANTHONY DERAEVE**; **RAINBOW HILL RANCH, INC.**, an Oregon corporation; **ROHDE GENERATIONS, INC.**, an Oregon corporation; **M. GRANT RICE**; **KEITH B. DEJONG**; **MATTHEW J. RICE**; **DEAN C. DODSON**; **RYAN KADELL**; **ROBIN KADELL**; **MT. HOPE SEED CO., INC.**, an | Civil No. 3:15-cv-01576-MO<br><br>**OPINION AND ORDER** |

1 – Opinion and Order

Oregon corporation; **RIDDELL FARMS, INC.**, an Oregon corporation; **GARY CROSSAN FARMS, LLC,** an Oregon limited liability company; **PAUL H. COUSSENS FARMS, LLC**, an Oregon limited liability company; **PHIL SPIESS**; **TIM PFEIFFER**; **KCK FARMS, LLC**, an Oregon limited liability company; **CARLTON SEED, LLC**, an Oregon limited liability company; **MEADOW RIDGE FARMS, INC.**, an Oregon corporation; **MARK W. GEHRING and CAROL A. GEHRING**, individually and dba **GEHRING FARMS**; **TRIPLE K, LLC**, an Oregon limited liability company; **LARRY D. BELL**; and **INTEGRATED SEED GROWERS, LLC**, an Oregon limited liability company; **BEN VAN DYKE FARMS, INC.**, an Oregon corporation; **JOHN T. BERNARDS**, an individual; **SUSAN K. BERNARDS**, an individual; **BROOKS FARM, LLC**, an Oregon limited liability company; **BRYCE CRUICKSHANK**, an individual; **MARK COX**, an individual; **WADE COX**, an individual; **CW FARMS, LLC**, an Oregon limited liability company; **DEERHAVEN FARMS, INC.**, an Oregon corporation; **STAN GAIBLER**, an individual; **HAWMAN FARMS, INC.**, an Oregon corporation, also dba **RIVERVIEW SEED COMPANY**; **HUNTONS' FARM, LLC**, an Oregon limited liability company; **JDB FARMS, LLC**, an Oregon limited liability company; **L & J VALLEY FARMS, LLC**, an Oregon limited liability company; **EDGAR F. LAFAYETTE**, individually and dba **LAFAYETTE'S CALAPOOIA VALLEY FARMS**; **MID VALLEY FARMS, INC.**, an Oregon corporation; **JEFFREY MYRON NICHOLS**, individually and dba **JN FARMS**; **OAK PARK FARMS, INC.**, an Oregon corporation; **MATT PARKER**, an individual; **MARK STATZMAN**, an individual; and **JASON WHITEHEAD**, an individual,

           Defendants.

**MOSMAN, J.**,

      Defendant Hawman Farms moved for summary judgment against Northwest seeking a declaratory judgment that its possessory lien is a valid, first priority lien on all seeds in its possessions. Plaintiff argues both that Hawman waived its lien and that summary judgment is

2 – Opinion and Order

not appropriate. For the reasons set forth below I GRANT Defendant Hawman's Motion for Summary Judgment [131].

I. Background

Hawman Farms and Cover Crop Solution ("CCS"), a Pennsylvania corporation, entered a contract for Hawman to plant, harvest, clean, and store a species of radish seed furnished by CCS. CCS was to pay Hawman based on the poundage of seed as well as for cleaning and testing of the seed. The payments were due on February 15, 2015 and October 15, 2015. Hawman has stored the seeds since August 20, 2014.

In July 2014, Northwest made a loan to CCS of $7,000,000, secured by an interest in all of CCS's assets, including the seeds in question. This interest was perfected through a financing statement filed in Pennsylvania; another financing statement was filed in Oregon on August 17, 2015. Hawman now claims a possessory lien in the seeds. To realize the seeds' value, Hawman would need to proceed to a foreclosure sale. It has not yet determined whether this will be a judicial foreclosure or a public sale.

II. Legal Standard

Summary Judgment is appropriate if there is no genuine issue as to any material fact. *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

III. Discussion

Northwest argues Hawman has waived its right to a possessory lien through its contract with CCS. In the alternative, Northwest argues that even if Hawman has a lien, summary judgment is not appropriate until the lien is foreclosed.

3 – Opinion and Order

      a. Summary Judgment is Appropriate

Northwest argues summary judgment is inappropriate because it is not yet clear what laws would govern a foreclosure proceeding. While it is true there are two different laws that would govern notice requirements for foreclosure of the lien depending on the type of foreclosure Hawman pursues, the argument that summary judgment is inappropriate until foreclosure is misplaced. That argument addresses the consequences of notice on the type of foreclosure, but does not explain how those consequences change the validity or priority of the lien.

The provision on which Plaintiff relies is ORS 87.196, which governs a public sale. If Hawman proceeds with a public sale, ORS 87.196 required Hawman to provide notice to any security interest holder by March 17, 2015, which was 30 days after the cleaning of the seeds had been completed. Without providing such notice and if they pursue a public sale, Hawman would be liable to the security interest holder, Northwest, for the fair market value of the seeds. In contrast, if Hawman pursues a judicial foreclosure, the notice provision would not apply. This uncertainty as to liability after a sale, according to Plaintiff, precludes me from determining which interest has precedence before a sale.

Plaintiff's argument fails. Even if Hawman proceeded with a public sale and Northwest was ultimately owed the fair market value of the seeds, Hawman's possessory lien could still have precedence over Northwest's secured interest. The public sale and failure to notice would simply mean Northwest may be entitled to compensation *after* the sale. A declaratory judgment that Hawman has a valid possessory lien would not change that outcome.

b. No Waiver Occurred

The parties do not dispute that without the contract between CCS and Hawman, Hawman would have a valid possessory lien that would take precedence over Northwest's interest. However, Hawman signed a contract with CCS in which it may have relinquished its right to any lien. The narrow question before me is whether that contract waived Hawman's rights to a possessory lien.

Paragraph 1 of the contract states "the title to all . . . seed produced hereunder shall be and remain in [CCS], and that [Hawman] shall have no title therein or lien thereon of the variety itself." Northwest points to this language as support for the proposition that Hawman has relinquished all rights to any liens. However, Hawman argues Paragraph 1 must be considered in the context of the whole contract, with particular consideration directed at Paragraph 3, which states:

> CCS is producing this Variety under a Variety Licensing Agreement for a Licensor. The parties agree that the Variety shall at all time remain the property of the Licensor of the Variety. In order to enable Licensor to protect its interest in the Variety, [CCS] agrees that it shall not pass title to any seed provided to [CCS's] growers and that such seed and the crops produced from the seed shall be the property of [CCS] subject only to the lien of the grower for sums due under the growing contract (the allowable lien follows the crop growing and production, not the variety)."

Hawman argues the combination of Paragraph 1 and Paragraph 3 shows the limitation on liens in Paragraph 1 was intended to reflect the limitation on CCS's rights to the seed under its separate licensing agreement. That is, the growers could not take what CCS did not possess (the licensing rights to the seed). Hawman also suggests the allowance of a lien in Paragraph 3 contrasts with the broad ban in Paragraph 1, suggesting the contract's ban on no lien "of the variety itself" means no lien on the

5 – Opinion and Order

licensing interest. To resolve this dispute, I must apply traditional principles of contract interpretation.

Oregon law prescribes a three-step process for analyzing contracts. *Yogman v. Parrott*, 325 Or. 358, 363, 937 P.2d 1019, 1022 (1997).   First, I consider the provision of the contract at issue in the context of the four corners of the document. *Id.* If that is ambiguous, I then examine extrinsic evidence of the contracting parties' intent. *Id.* Finally, if the meaning of the provision remains ambiguous, I may rely on appropriate maxims of construction. *Id.*   Here, the provision "no. . .lien of the variety itself" would seem to be a prohibition against all liens. However, when read in the context of Paragraph 3, which allows a lien to the grower for sums due under the growing contract, it seems clear that "no lien" cannot mean absolutely no lien.  The clearest explanation is to read "of the variety itself" to mean no lien on the proprietary licensing interest of seed the Licensor gave to CCS.  Such an interpretation fits with Paragraph 3's focus on CCS not passing title to any of the growers.  To the extent it remains ambiguous, neither party has offered any extrinsic evidence to be considered at step two.

At step three, maxims of construction are applied.  One such maxim is the rule of interpretation against the drafter. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 470–71, 836 P.2d 703 (1992); *see also* Restatement (Second) of Contracts § 206 ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). Here, CCS was the drafter as evidenced by its letterhead and the blanks for different growers.  Applying the maxim, the provision must be construed against CCS, and the lien must be allowed.

6 – Opinion and Order

The language of the contract suggests neither CCS nor Hawman intended a blanket prohibition on all liens, but rather intended to protect the Licensor's proprietary interest in the seed varietal. To the extent that ambiguity remains beyond the four corners of the document, I apply the maxim discussed above to find that Hawman has a valid possessory lien.

   c. Attorney Fees Are Inappropriate

Hawman moves for attorney fees under ORS 20.105, which allows for attorney fees if the opposing party asserted a claim or defense without an objectively reasonable basis. OR. REV. STAT. 20.105. While it was procedurally improper for Hawman to raise the issue in its motion for summary judgment, I find the answer is clear enough to address at this time. *Romani v. N.W. Tr. Servs., Inc.,* 2014 WL 1072698, *1 (D. Or. Mar. 17, 2014) (noting "[w]hether pled as a remedy or independent claim, neither party is entitled to attorney fees without first prevailing and then filing a separate motion"). Northwest offered a reasonable interpretation of the contract between Hawman and CCS. There is plain language in the contract to suggest that no liens are allowed and the statutory notice requirement for public foreclosures suggests Plaintiff may, at some point, end up with the value of the seeds. Thus Hawman's motion for attorney fees is DENIED.

//

//

//

//

//

//

//

7 – Opinion and Order

IV.     Conclusion

The contract as a whole suggests the parties intended something other than a blanket prohibition on all liens.  Oregon law grants possessory liens in the absence of a contract otherwise.  As such, I find that Hawman has a valid possessory lien and GRANT its motion for summary judgment [131].   Because Northwest offered reasonable defenses, I DENY Hawman's motion for attorney fees [131].

DATED this  9th     day of February, 2016.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge