UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**NORTHWEST BANK f/k/a NORTHWEST SAVINGS BANK,** a Pennsylvania state-chartered savings association,

        Plaintiff,

v.

**MCKEE FAMILY FARMS, INC. et al.,**

        Defendants.

3:15-cv-01576-MO

**OPINION AND ORDER**

**MOSMAN, J.**,

Plaintiff filed two Motions for Summary Judgment [174, 182]. Defendant Integrated Seed Growers [173] and Creekside Valley Farms and KCK Farms [176] filed Cross Motions for Summary Judgment. On April 20, 2016, I heard oral argument from the parties on the motions. I requested supplemental briefing on three issue: 1) whether Northwest Bank was entitled to notice of the extensions of the growers' grain producer liens; 2) whether the rule for possessory liens articulated in *Yellow Manufacturng. Acceptance Corp. v. Bristol,* 193 Or. 24, 236 P.2d 939 (1951). applies to this case; and 3) whether this case should proceed to a bench trial or a jury trial. I write now to clarify my positions on these three issues.

For the reasons I articulated at oral argument and outline below, I DENY Integrated Seed Growers' Motion for Summary Judgment [173] and Northwest Bank's Motion for Summary

1 – Opinion and Order

Judgment Against Group 1 Defendants [174].  I GRANT in part and DENY in part Creekside Valley Farms' and KCK Farms' Motion for Summary Judgment [176]. I agree with Defendants' argument in their supplemental briefing that the notice provisions for extending grain producer liens requires only that growers send notice to those who have filed with Oregon's Secretary of State. Based on this, I GRANT in part Creekside's Motion and find Creekside has a priority lien for the seed on which it had timely filed a proper extension even though it did not provide notice to Northwest Bank. I DENY Northwest Bank's Motion for Summary Judgment against Group 2 and Group 3 Defendants [182]. While I find that *Yellow Manufacturing* applies to this case, the agency role of the warehouses and the validity of the Bank's security interest remain to be considered at trial. I also rule that the trial is to be a bench trial.

## Discussion

A.  Notice of Extension on Grain Producer Lien

Plaintiff argues Defendants' grain producer liens ("GPLs") cannot have priority over Plaintiff's security interest because Defendants did not properly notify Plaintiff when the Defendants extended their GPLs.  Defendants argue the notice provisions of ORS § 87.762 and ORS § 87.252 only apply to entities which have to register with the Secretary of State.  Since the parties agree the Bank did not have to register, it follows that it is not entitled to notice.  I agree with Defendants that to properly extend their liens, the growers need only have notified those registered with the Oregon Secretary of State.

There are two different ways of filing proper extensions with two slightly different requirements of notice.  One notice requirement states "the lien claimant shall send a copy of the notice to all holders of security interests in the chattel to be charged with the lien who duly perfected such security interests *by filing notice thereof with the Secretary of State.*" OR. REV.

2 – Opinion and Order

STAT. ANN. § 87.252 (West) (emphasis added).  Under this language, the Bank was not entitled to notice from the growers since it had not filed with the Secretary of State.

The other notice statute says "[i]f an agricultural producer files a notice of lien under this section, the producer shall send notice to *all persons that have filed a financing statement under ORS chapter 79* that perfects a security interest in all or part of the inventory of the purchaser or the proceeds from the sale of the inventory." OR. REV. STAT. ANN. § 87.762(3) (West) (emphasis added).  Plaintiff could argue Chapter 79 includes the choice of law provisions which directs Plaintiff to file in Pennsylvania and because the Bank did so, it would be an entity "that filed a financing statement under ORS Chapter 79."

However, this interpretation is significantly more strained than the one Defendants advance.  For the most part, Chapter 79 explains how to file a financing statement in Oregon with the Oregon Secretary of State.  The central topic of Chapter 79 is how to file in Oregon and suggests the notice provision by saying "persons that have filed a financing statement under ORS chapter 79" meant persons that have filed a financing statement in Oregon.  This interpretation is further supported by a later part of the code which references the notice provision for GPLs and states "if the Secretary of State receives notice of a lien created under the [grain producer's lien statute], the Secretary of State, upon request, shall furnish the person who filed the lien with a list of persons who have filed a financing statement under ORS 79.0501 that perfects a security interest in the inventory, proceeds or accounts receivable of the lien debtor or purchaser." OR. REV. STAT. ANN. § 87.930 (West).  This statute, when read in conjunction with the statute on notice provision, adds context to "filed a financing statement under Chapter 79" which  suggests the notice provision may apply only to those who have filed in Oregon.

3 – Opinion and Order

Finally, the existence of a parallel notice provision of ORS § 87.252 requiring notice only to those who have filed with the Oregon Secretary of State suggests ORS § 87.762(3) should be similarly restricted. It would make little sense for one statute to require growers to pursue financing statements in every state while another statute requires growers only to consider financing statements filed in Oregon. Because of the text, the surrounding statutes, and the alternative notice provision, I find the growers were only required to notify those who had filed a financing statement with the Oregon Secretary of State.

B.  Possessory Liens and Relinquishment of Possession

At oral argument, the parties disagreed about whether relinquishment of *actual* possession of the radish seeds fatally compromised the Defendants' possessory liens. In particular, I asked the parties to reconcile the approach of *Yellow Manufacturing. Acceptance Corp. v. Bristol*, 193 Or. 24, 236 P.2d 939 (1951) and *McGregor Co. v. Heritage*, 291 Or. 420, 631 P.2d 1355 (1981).

Our case straddles the issues presented in *McGregor* and *Yellow Manufacturing.* The question in *McGregor* was whether the assignment of a claim rooted in a possessory lien, together with a transfer of possession of the collateral that supported the claim, destroyed the priority of the possessory lien. The question in *Yellow Manufacturing* was whether a lienholder returning possession of the collateral to the debtor destroyed the priority of the lienholder's lien. If at trial I determine McKee is CCS's agent, our case will be a mirror to *Yellow Manufacturing* because the lienholder will have delivered the collateral to the debtor and the growers will likely have forfeited their possessory lien. However, if at trial it becomes clear that McKee is neither an agent of CCS nor of the growers, then the question is whether a creditor's transfer of the collateral to a third party destroys that creditor's priority status with respect to other creditors.

4 – Opinion and Order

*Yellow Manufacturing* is clear that "the common-law lien . . . on a chattel can be asserted against a third person only when the property is retained in the actual and continuous possession of the lien claimant, his agent or servant." *Yellow Manufacturing*, 193 Or. at 40 (quoting *Rahm v. Viall*, 185 Ill. App. 425 (1914)). However, the ultimate question before the *Yellow Manufacturing* court was whether transferring the collateral *to the owner* destroyed priority with respect to a third party.

Defendants argue *McGregor* addresses the question at issue in our case: whether transfer to a third party (rather than to the debtor) also destroys the initial lienholder's priority. The *McGregor* court distinguishes *Yellow Manufacturing* based on to whom the collateral was transferred. *McGregor* noted that in *Yellow Manufacturing* "the claimant of the lien returned the collateral to the debtor, whereas in this case at the same time that the claim was assigned, the security in the possession of the assignor was transferred to the assignee along with it and was not returned to the debtor." *McGregor,* 291 Or. at 426. However, relying on this dicta to establish *McGregor* as the baseline rule for the relationship between third party transfers and possessory liens is to ignore the importance of the language "*at the same time that the claim was assigned.*" *Id.* The assignment of the creditor's claim is vitally important to the logic of *McGregor.* In *McGregor* the creditor both transferred possession of the collateral *and* assigned its interest in the lien to the same third-party. *Id.* The appellate court in *McGregor* acknowledges this difference when it states "[t]his is not a case where the security in which the claimant asserts a possessory lien is transferred to a third party and separated from the claim." *McGregor Co. v. Heritage*, 49 Or. App. 489, 502, 620 P.2d 488, 495 (1980), *modified*, 291 Or.

5 – Opinion and Order

420, 631 P.2d 1355 (1981). By contrast, in our case the growers have only transferred possession and are still claiming rights in the lien.[1]

Indeed, the law applied by the Oregon Supreme Court in *McGregor* suggests the Court focused its analysis on the assignment rather than the transfer of possession. The Court noted "as for reliance . . . upon the rule as stated in [Corpus Juris Secundum], we prefer the reasoning of the Court of Appeals . . . which . . . adopted in substance . . . the rule as stated in Restatement of Security." *McGregor*, 291 Or. at 426. The CJS language directly contemplated only transfer of possession of the collateral; in contrast the Restatement of Security looked only at the assignment of claims secured by possessory liens. *Id.* Since there is no assignment of claim in our case, the logical underpinnings that lead the *McGregor* court to its holding that "the lien was not lost by the assignment of that claim, together with a transfer of possession of the funds" is limited, at best. *Id.* at 426-27. I do not consider it binding precedent on the question of whether a transfer of collateral to a third party destroys a creditor's possessory lien.

Defendants try to distinguish *Yellow Manufacturing* on four other grounds. First, by arguing that possession had not been relinquished because it was "only for the limited purposes of cleaning or testing." Possession had been relinquished when the growers gave up the seed, whatever the reasons. Defendants argue relinquishment of possession did not occur; they do not make, and I do not address, the argument that possession has only been conditionally relinquished.

Second, Defendants argue *Yellow Manufacturing* was based on a statute that was more protective toward possessory liens than the common law. In actuality, *Yellow Manufacturing* relied extensively on the common law. *See Yellow Mfg.* at 40 ("the common-law lien . . . on a

---

[1] One could argue that for Group 2 defendants, the claim and the possession have been reunited. No party has argued that, once extinguished, combining the claim and the possession of collateral will re-establish priority.

6 – Opinion and Order

chattel can be asserted against a third person only when the property is retained in the actual and continuous possession of the lien claimant, his agent or servant."). However, even without the statements in *Yellow Manufacturing*, the common law does not support the idea of constructive possession (as would be necessary to succeed on this argument). *See* 53 C.J.S. Liens, s 17d(3) (1948) (a "lien dependent on possession is waived or lost by the lienholder voluntarily and unconditionally parting with possession or control of the property to which it attaches; and such lien cannot be restored thereafter by resumption of possession").

Third, Defendants argue *Yellow Manufacturing* looked at a possessory lien in conjunction with a chattel mortgage which, they argue, has heightened protections. Looking exclusively at possessory common law liens it is still true that "there is no doctrine of constructive possession that will support a common-law, possessory lien, except when actual possession has been involuntarily relinquished." 53 C.J.S. Liens § 12.

Finally, Defendants argue I should give their liens priority because they "substantially complied" with the statutes as did the lienholder in *McGregor*. In *McGregor,* the lienholder put down the individual's name "doing business as" the corporation rather than just naming the corporation. *McGregor Co.*, 291 Or. at 424. All parties were aware of whom the lienholder was referencing. The court found it was a *de minimus* violation and found the lienholder should retain priority because of substantial compliance with the requirements. *Id.* Failure to retain possession is more than a *de minimus* violation of a possessory lien. I find that *Yellow Manufacturing* applies and Defendants have forfeited their possessory liens unless they can show McKee is their agent.

7 – Opinion and Order

### C. Bench Trial

Declaratory judgment actions are inherently neither equitable nor legal; the nature of the underlying dispute determines whether a jury trial is available. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959). Therefore, this case will be a bench trial if the priority of liens is an equitable question, but a jury trial if it is a legal question.

Defendants first argue this case should be defined as one for the recovery of personal or real property.  This argument ignores the long history of examining actions involving liens as something other than simply the recovery of personal properly.  *Perera Co. v. Goldstone*, 491 F.2d 386, 387 (9th Cir. 1974) ("the enforcement of liens is a long established and well recognized function of the courts of equity"); *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 546 (6th Cir. 2013) ("actions to enforce *liens* remain equitable actions, even when the dispute that led to the lien implicates the meaning of the underlying contract."); *Damsky v. Zavatt*, 289 F.2d 46, 53 (2d Cir. 1961) ("foreclosure of the mortgagor's equity of redemption was an established head of equity jurisdiction well before 1791").

The Ninth Circuit has declared an enforcement action of a lien is an equitable action. *Perera Co.*, 491 F.2d at 387. Other district courts have specifically found determining the priority of liens to be an equitable question. *See In re Plaza Resort at Palmas, Inc.*, 488 B.R. 50, 56 (D.P.R. 2013) ("determining priority of [a] lien is still equitable even though it is influenced by state law"); *In re Glen Eagle Square, Inc.*, 132 B.R. 106, 114 (Bankr. E.D. Pa.), *aff'd sub nom. Matter of Glen Eagle Square, Inc.*, 132 B.R. 115 (E.D. Pa. 1991) (noting the "clearly-equitable issue of the priority of liens"); *In re Fox Bros., Inc.*, 142 B.R. 320, 322 (Bankr. E.D. Ark. 1992) (holding the case as a whole required a jury trial "despite the fact that the intervenor also requests equitable subordination and determination of lien priority").  I find that the

underlying dispute is determining the validity and priority of different liens and, as such, presents an equitable question to be resolved by a bench trial.

## Conclusion

For the foregoing reasons, as well as the reasons I articulated at oral argument, I DENY Integrated Seed Growers' Motion for Summary Judgment [173] and Northwest Bank's Motion for Summary Judgment Against Group 1 Defendants [174]. I GRANT in part and DENY in part Creekside Valley Farms' and KCK Farms' Motion for Summary Judgment [176]. I agree with Defendants' argument in their supplemental briefing that the notice provisions for extending grain producer liens requires only that growers send notice to those who have filed with Oregon's Secretary of State. Based on this, I GRANT in part Creekside's Motion and find Creekside has a priority lien for the seed on which it had timely filed a proper extension even though it did not provide notice to Northwest Bank. I DENY Northwest Bank's Motion for Summary Judgment against Group 2 and Group 3 Defendants [182]. While I find that *Yellow Manufacturing* applies to this case, the agency role of the warehouses and the validity of the Bank's security interest remain to be considered at trial. I also rule that the trial is to be a bench trial.

DATED this  12    day of May, 2016.

                                            /s/ Michael W. Mosman
                                           MICHAEL W. MOSMAN
                                           Chief United States District Judge